UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CHARLES GABLE and
PRECIOUS CASTNER,

       Plaintiffs,

       v.                                                   Case No. 18-C-1630

ERIK M. DOUGLAS,
ZACHARY J. MULROY, and
NATHAN M. FRANZKE,

       Defendants.

# DECISION AND ORDER

Having previously sued the lender, repossessor, and tow truck drivers who repossessed his 2004 Kia on December 22, 2016, after they failed to make the installment payments due under the purchase contract, Plaintiffs Charles Gable and Precious Castner filed this action against the Neenah Police Officers who had the misfortune of responding to their call for help. Plaintiffs claim that Officers Erik Douglas, Zachary Mulroy, and Nathan Franzke violated their constitutional rights when they unlawfully intervened in the repossession of Gable's vehicle in December 2016. Presently before the court is Defendants' motion for summary judgment. For the following reasons, Defendants' motion will be granted in part and denied in part.

## BACKGROUND

Plaintiffs are adult residents of Neenah, Wisconsin. Defs.' Proposed Findings of Fact (DPFOF) ¶ 1, Dkt. No. 17. Defendants are police officers for the City of Neenah Police Department. *Id.* ¶¶ 2–4.

On July 16, 2015, Gable financed the purchase of a used 2004 Kia Optima for approximately $10,000. The loan was financed through Universal Acceptance Corporation

(UAC). Under the Vehicle Retail Installment Contract (Installment Contract), Gable agreed to make payments in the amount of $300 per month on the loan. *Id.* ¶ 7. The Installment Contract noted that Gable would be in default if an amount greater than one full payment remained unpaid for more than 10 days after the scheduled or deferred due dates. *Id.* ¶ 8. The contract advised that the consequences of a default included, but were not limited to, the following:

> If you are in default, subject to any notice and right to cure required by law, we may require you to pay at once the unpaid balance of the Amount Financed, the unpaid part of the Finance Charge and all other amounts due under this Contract. We may take back (repossess) the vehicle. We may also take items of personal property found in the vehicle when we take back the vehicle and hold them for you. If you do not claim them within 30 days or any other applicable time period required by law, we will dispose of them in a commercially responsible manner.

*Id.* ¶ 9. Plaintiffs are not married and Castner did not co-sign the loan. *Id.* ¶¶ 10–11. Castner was not able to legally operate the Kia because she has never possessed a Wisconsin Driver's License. *Id.* ¶ 13.

Gable defaulted on his payment obligations under the Installment Contract prior to September 2016. On September 9, 2016, UAC sent Gable a notice of right to cure the default. Gable failed to cure the default, and on November 4, 2016, UAC sent Gable a notice of repossession for the Kia. *Id.* ¶ 14. In December 2016, UAC called Gable to inform him that he was behind on the loan payments and demanded payment. *Id.* ¶ 16. UAC hired Minnesota Repossessors, Inc. to repossess the Kia. *Id.* ¶ 17.

On the evening of December 22, 2016, Castner went outside and saw two repossession men attempting to tow the Kia. An individual employed by the repossession company advised her that he had a repossession order. Castner did not agree with the statement and asked the

2

individual to leave. At some point, Gable and Castner's brother came outside. Plaintiffs sat inside the Kia, and Castner called the Neenah Police Department on her mobile phone. *Id.* ¶ 19.

At approximately 8:38 p.m., Defendants were dispatched to 506 South Lake Street to assist on a civil matter involving a tow repossession. Neenah Police Officers are trained to maintain the peace when they are dispatched in response to civil issues, such as repossessions. *Id.* ¶ 21. Dispatch noted that Castner advised that a tow truck was in her driveway trying to repossess her vehicle but the repossessors would not provide proper paperwork. She requested that an officer respond. *Id.* ¶ 20. Defendants were dispatched to the residence to ensure there were no disturbances, fights, or arguments that would have prohibited the Kia from being repossessed. *Id.* ¶ 21. While waiting for Defendants to arrive, Castner called UAC to ask why the car was being repossessed. *Id.* ¶ 22. During this telephone conversation, Castner learned Gable had in fact defaulted on the loan and had lied to her about making payments. *Id*. ¶ 23.

Officer Franzke was the first to arrive on the scene, and Officers Mulroy and Douglas arrived shortly thereafter. Upon their arrival, Defendants observed a tow truck backed into the driveway of the residence and a female sitting inside of the Kia. *Id.* ¶ 25. Officer Franzke approached the Kia and made contact with Castner, who was still on the telephone with the UAC representative. *Id.* ¶ 26. Castner heard the tow company employees ask an officer for the car keys, and the officer then asked Castner for the keys. Pls.' Proposed Findings of Fact (PPFOF) ¶ 6, Dkt. No. 23. The officer knocked on Castner's window, and when she indicated to him that she was on the phone, the officer opened the car door and told her to get off the phone and out of the car so the towing company could take the car. *Id.* ¶¶ 7–8. As Castner got out of the car, she saw Gable talking to a tow company employee and one of the police officers.

*Id.* ¶ 10. Gable refused to give the keys to the tow company employees and told Castner not to give up her keys. *Id.* ¶ 15. Defendants dispute that any officer opened the car door or told her to exit the vehicle. Instead, Defendants claim that when Castner exited the Kia on her own, Officer Franzke obtained information as to why she called the police department. DPFOF ¶ 27. Castner asked Officer Franzke if the tow company had the correct paperwork to repossess the Kia. *Id*. The parties do not dispute that Officer Franzke spoke to an individual from the tow company and that the individual presented paperwork to him. PPFOF ¶ 12; DPFOF ¶ 28. Officer Franzke reviewed the paperwork and informed Castner that the tow company had paperwork. *Id.* He did not tell Plaintiffs what the paperwork was or its legal significance and did not instruct the individuals from the company to show Plaintiffs the paperwork. Gable then relinquished his keys to the tow company employees.

Plaintiffs do not dispute that Gable never told any of the Neenah Police Officers that he did not want his Kia repossessed. DPFOF ¶ 36. Defendants contend that if Gable had objected to the repossession in their presence, they would have sent the tow company away. *Id.* ¶ 37. Defendants assert that they did not threaten Plaintiffs with arrest for any reason. *Id.* ¶¶ 41–44. Castner and Gable previously testified under oath regarding their interactions with the officers on December 22, 2016, and made no mention of the threats of arrest. *Id.* ¶¶ 42–43. During their depositions in this case, however, Gable testified that the police ordered Plaintiffs to either give up the car or go to jail. Castner testified that the officers stated that, if Plaintiffs did not give them the car, the officers would charge them with disorderly conduct and arrest them. Pls.' Resp. DPFOF ¶ 44, Dkt. No. 22. Officers Mulroy and Douglas claim that, during the repossession, they stood by and observed but did not interact with Plaintiffs or the tow

4

company. DPFOF ¶ 39. Castner cannot identify which officer allegedly threatened to arrest her but testified that it was not Officer Douglas or Mulroy. *Id.* ¶ 45.

After relinquishing the keys to the tow company employees, Plaintiffs were permitted to remove their personal items from the vehicle. *Id.* ¶ 33. Gable, Castner, and Castner's brother removed property from the vehicle. Castner's brother made approximately five trips to the house with his arms full of items from the Kia. *Id.* ¶ 34. Defendants did not set time constraints on Plaintiffs' ability to remove their personal items from the vehicle and did not instruct Plaintiffs to stop removing property at any time. *Id.* ¶ 35. Plaintiffs contend that they were given an insufficient amount of time to remove their personal property from the vehicle. PPFOF ¶ 20. When the tow company employees took the car away, it still had Plaintiffs' daughter's Christmas presents, tools, blankets, and other materials in the trunk. *Id.* ¶ 22.

The Kia was ultimately removed from the property by the tow company without incident. After the repossession men left, Defendants left the scene. DPFOF ¶ 47. Plaintiffs were not arrested or cited for anything related to the December 22, 2016 repossession. *Id.* ¶ 46. Defendants never had possession of the Kia or of Plaintiffs' personal property. *Id.* ¶ 50. During the first or second week of January 2017, Gable made arrangements to go to Badger Land Auto Auction in Fond du Lac, Wisconsin to retrieve the Kia. *Id.* ¶ 48. When Plaintiffs went to retrieve the Kia, they noticed items were missing from the vehicle. *Id.* ¶ 49.

As noted above, Plaintiffs previously filed an action arising out of many of the same facts against the lender, the repossessor, and the two truck drivers. *Gable v. Universal Acceptance Corp.*, No. 17-C-463, 338 F. Supp. 3d 943 (E.D. Wis. 2018). That case was settled by the parties on the first day of trial. Plaintiffs then commenced this action against the Neenah

5

police officers called to the scene of what was the first of two attempted repossessions of Gable's 2004 Kia, apparently seeking the same or similar damages.

**LEGAL STANDARD**

Summary judgment is appropriate when the movant shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotel, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "[A] factual dispute is 'genuine' for summary judgment purposes only when there is 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "[A] 'metaphysical doubt' regarding the existence of a genuine fact issue is not enough to stave off summary judgment, and 'the nonmovant fails to demonstrate a genuine issue for trial where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Id.* (quoting *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996)). Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

**ANALYSIS**

**I. Fourth and Fourteenth Amendment Claims**

Plaintiffs claim Defendants are liable under § 1983 because they seized Gable's car and transferred possession of it to the repossession company in violation of their Fourth Amendment right to be free from unreasonable searches and their Fourteenth Amendment right to due process. The Fourth Amendment provides for "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable . . . seizures." A "seizure" of property occurs when there is "some meaningful interference with an individual's possessory interests in that property" caused by a government actor. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). While an officer who simply stands by to keep the peace during a private repossession is not liable for the resulting deprivation of property, an officer is liable if he "affirmatively aided in a repossession such that he can be said to have caused the constitutional deprivation." *Harvey v. Plains Twp. Police Dept.*, 635 F.3d 606, 609–10 (3d Cir. 2011) (citing *Abbott v. Latshaw*, 164 F.3d 141, 147 (3d Cir. 1998)); *see also Marcus v. McCollum*, 394 F.3d 813, 819 (10th Cir. 2004) ("[O]fficers may act to diffuse a violent situation but may not aid the repossessor in such a way that the repossession would not have occurred but for their assistance."). A state official can be held liable for a private decision if he has "exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). The court examines the totality of the circumstances in assessing whether an officer affirmatively aided in a repossession and considers whether the officer "1) arrived with the repossessor, 2) stood in close proximity to the repossessor, 3) told the debtor the seizure was

7

legal, 4) unreasonably recognized the documentation of one party over another, 5) ordered the debtor to stop interfering or be arrested, or 6) failed to depart before completion of the repossession." *Jackson v. City of Milwaukee*, No. 12-c-490, 2013 WL 3154073, at *2 (E.D. Wis. June 20, 2013) (citing *Marcus*, 394 F.3d at 819). To succeed on a due process claim under the Fourteenth Amendment, a plaintiff must demonstrate "(1) deprivation of a protected interest, and (2) insufficient procedural protections surrounding that deprivation." *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008).

As an initial matter, Defendants assert that Castner has no claim based on the repossession of the Kia because she had no property interest in the vehicle. Gable was the only individual who entered into the Installment Contract with UAC; Castner was not a cosigner. "[I]n any due process case where the deprivation of property is alleged, the threshold question is whether a protected property interest actually exists." *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 904 (7th Cir. 2011) (citing *Buttitta v. City of Chicago*, 9 F.3d 1198, 1201 (7th Cir. 1993)). To establish a protectable property interest, "a plaintiff must be able to point to a substantive state-law predicate creating that interest." *Omosegbon v. Wells*, 335 F.3d 668, 674 (7th Cir. 2003) (citation omitted).

Plaintiffs cite *Fuentes v. Shevin*, 407 U.S. 67, 71 (1972), to support their assertion that Castner has a protected property interest in the Kia. In *Fuentes*, the plaintiffs challenged Florida and Pennsylvania law regarding prejudgment replevin procedures under the Due Process Clause of the Fourteenth Amendment. The plaintiffs entered into separate conditional sales contracts for the purchase of home appliances and furniture. The plaintiffs had made several installment payments under the contracts but had fallen behind on their payments. The statutes at issue

8

allowed creditors to use the sheriff's department to assist in the repossession of the goods based only on the statements made by the creditor. *Id.* at 77–78. The sellers of the property obtained writs of replevin, and the sheriffs seized the appliances and furniture from the plaintiffs. *Id.* at 71–72. The Supreme Court recognized that, as a party to the installment contract, the plaintiffs had a protected interest in the property. *Id.* at 70. The Court held that the replevin statutes deprived the plaintiffs of property without procedural due process of law because they were denied the opportunity to be heard before the property was taken. *Id.* at 83–84. In this case, Gable, not Castner, was the only party to the Installment Contract, and therefore had the only protected property interest in the Kia.

Plaintiffs also rely on *Watts v. Watts*, 137 Wis. 2d 506, 405 N.W.2d 303 (1987), to establish Castner's property interest in the Kia. *Watts* involved a dispute between two unmarried cohabitants, who had ended their 12-year relationship, over their respective interests in the property they had accumulated during the cohabitation. The Wisconsin Supreme Court held that neither public policy nor common-law marriage principles preclude unmarried, former cohabitants from raising "claims based upon unjust enrichment following the termination of their relationships where one of the parties attempts to retain an unreasonable amount of the property acquired through the efforts of both." *Id.* at 532–33. Plaintiffs assert that, because Wisconsin recognizes a right of unmarried cohabitants to receive reimbursement for contributions made during their relationship, Castner has a protected property interest in the Kia. But *Watts* stands for "a very simple proposition: Wisconsin's public policy favoring marriage does not prohibit unmarried formerly cohabitating couples from asserting unjust enrichment claims against one another." *Sands v. Menard*, 2017 WI 110, ¶ 41, 379 Wis. 2d 1, 904 N.W.2d

9

789 (citing *Watts*, 137 Wis. 2d at 532). It does not create a property interest where one does not already exist. Castner has failed to establish that she has a recognized property interest in the vehicle. Absent a possessory or property interest in the Kia, Castner cannot establish a claim for violation of her Fourth or Fourteenth Amendment rights. Accordingly, summary judgment will be granted in favor of Defendants on these claims.

As to Gable's claims, construing all facts in favor of Gable, as the court is required to do at this stage, Gable has created a material dispute of fact as to whether Defendants aided the towing company to implicate them in the repossession. It is undisputed that Defendants were summoned to the scene at Castner's request, advised Plaintiffs that this was a civil matter and they could not interfere, and did not tell Gable that the repossession was legal. It is also undisputed that Gable never expressly told any of the officers he did not want the Kia repossessed, though it was reasonably inferable from the surrounding circumstances that he was objecting. Gable asserts that he had sat in the vehicle to prevent the repossession, refused to give up his keys in the presence of the police, and only allowed the repossession to occur because one of the officers threatened to arrest him. Defendants deny that any officer threatened Gable with arrest. Without resolving this factual dispute, the court cannot conclude, as a matter of law, that Defendants did not aid the towing company with the repossession and therefore did not violate Gable's right to be free from unreasonable seizures and right to due process with respect to his vehicle.

Defendants assert that Plaintiffs have failed to establish that Officers Douglas and Mulroy were personally involved in the repossession. Gable cannot say which officer took which action but asserts that one of the officers threatened that he would go to jail if he did not

10

allow the tow company employees to repossess his vehicle. Although Gable does not know which officer threatened him with arrest, the evidence in the record shows that Officers Douglas and Mulroy were present during the repossession and it is reasonably inferable that they were acting in concert. Whether any officer threatened arrest and whether they were indeed acting in concert are factual questions that are not appropriate for resolution on summary judgment. Accordingly, the court denies summary judgment as to Gable's Fourth and Fourteenth Amendment claims that Defendants' level of intervention facilitated the illegal repossession of his vehicle.

Plaintiffs have not, however, established that their Fourth and Fourteenth Amendment rights were violated with respect to the personal property that remained in the Kia during its repossession. Plaintiffs concede that they were permitted to remove personal items from the vehicle and that Gable, Castner, and Castner's brother began removing items from the Kia. Castner's brother made approximately five trips to the house with items from the vehicle. Plaintiffs claim that they did not have sufficient time to remove their property from the vehicle before the tow company repossessed it. Although Plaintiffs contend that the officers were impatient while they removed their property from the vehicle, they do not dispute that the officers never placed time restraints on the removal of their property from the Kia and never had possession or control over these items. Plaintiffs have not established that Defendants violated their Fourth and Fourteenth Amendment rights with respect to their personal items. Accordingly, summary judgment will be granted in favor of Defendants for these claims.

**II. Qualified Immunity**

Defendants assert that they are entitled to qualified immunity. The doctrine of qualified immunity shields government officials from civil liability insofar as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Although qualified immunity is a defense to a § 1983 suit, the burden of meeting the elements of this two-part test rests on the plaintiff." *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 1999). In order to overcome a defense of qualified immunity, the plaintiff must point to "'a clearly analogous case establishing a right to be free from the specific conduct at issue'" or show "that 'the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights.'" *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009) (quoting *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001)).

The difficulty with Defendants' argument that they are entitled to qualified immunity is that they appear to concede the principle of law upon which Plaintiffs' case rests. They explicitly acknowledge that "if Gable would have objected to the repossession in the presence of the Officers, the Officers would have sent the tow company away." DPFOF ¶ 37, Dkt. No. 17. In other words, Defendants do not contend that they were uncertain of what their lawful duty is at a self-help repossession; they concede that if the debtor in possession objects to the repossession, their duty is to send the repossessor away. They contend they are not liable because Gable failed to object, but for the reasons already explained, that fact is in dispute.

12

If the jury credits Gable's version of events, the officer's involvement in the repossession may have violated Gable's Fourth and Fourteenth Amendment rights. *See Blum*, 457 U.S. at 1004 (A state official can be held liable for a private decision if he has "exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State."); *Marcus*, 394 F.3d at 819 ("[O]fficers may act to diffuse a violent situation but may not aid the repossessor in such a way that the repossession would not have occurred but for their assistance."). "When the qualified immunity inquiry cannot be disentangled from the disputed facts, the issue cannot be resolved without a trial." *Gonzalez*, 578 F.3d at 540 (citing *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996)). Because the qualified immunity analysis here is not sufficiently separable from the merits of the case, Defendants are not entitled to qualified immunity at this time.

## CONCLUSION

For these reasons, Defendants' motion for summary judgment (Dkt. No. 15) is **GRANTED-IN-PART** and **DENIED-IN-PART**. The motion is granted with respect to all claims brought by Castner, whose claims are dismissed in their entirety, as well as Gable's Fourth and Fourteenth Amendment claims as they relate to the personal property contained in the Kia. All that remains is Gable's Fourth and Fourteenth Amendment claims that Defendants level of intervention facilitated the illegal repossession of his vehicle.

**SO ORDERED** at Green Bay, Wisconsin this 2nd day of December, 2019.

s/ William C. Griesbach
William C. Griesbach, District Judge
United States District Court